## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 10-26337-JAD |
| | : | |
| SHUBH HOTELS PITTSBURGH, LLC, | : | |
| | : | Chapter 11 |
| Debtor. | : | |
| ————————————————X | : | |
| | : | |
| MERIDIAN FINANCIAL ADVISORS, LTD, Trustee of the Shubh Hotel Creditor Trust, | : | Adversary No. 12-02353-JAD |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Related to Doc. # 13 |
| | : | |
| CONTRACT PURCHASE & DESIGN, INC. and C&M INSTALLATIONS, INC., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| ————————————————X | | |

### MEMORANDUM OPINION

The matters before the Court are a *Motion to Intervene for the Limited Purpose of Filing a Motion for Stay* and a *Motion to Stay* filed by proposed intervenor, Mr. Steve Lewis ("Mr. Lewis"). These matters are core proceedings over which the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334.

These motions concern a criminal defendant's assertion of his Fifth Amendment privilege against self-incrimination and the court's interest in "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding." See Fed. R. Civ. P. 1.

It has been asserted that Mr. Lewis' role as the sole shareholder and president of the defendants, Contract Purchase & Design, Inc. and C&M Installations, Inc. (together, the "Defendants"), makes him a possible witness in this adversary proceeding (the "Adversary Proceeding"). Meanwhile, it has also been asserted that his indictment in a pending criminal action in the Northern District of Illinois implicates his privilege against self-incrimination under the Fifth Amendment. In essence, Mr. Lewis would like to use his privilege against self-incrimination as a shield preventing the prosecution of this civil adversary proceeding against his companies all the while he is under criminal indictment in the Northern District of Illinois. For the reasons set forth more fully below, the Court denies the motions filed by Mr. Lewis. As such, his intervention request will be denied, and the related motion to stay shall also be denied.

## I.

The debtor, Shubh Hotels Pittsburgh, LLC (the "Debtor"), filed a voluntary petition under chapter 11 of the Bankruptcy Code on September 7, 2010 in case number 10-26337-JAD (the "Lead Bankruptcy Case"). The Debtor's amended chapter 11 plan filed April 6, 2011 (the "Plan") was confirmed on May 20, 2011. (See Case No. 10-26337-JAD, Doc. # 1390). Under the Plan, a creditor trust was to be formed pursuant to a separate trust agreement for the purpose of, among other things, prosecuting and settling avoidance actions. (See Case No. 10-26337-JAD, Doc. # 927, § 1.1, p. 12). Pursuant to these provisions of the confirmed Plan, a creditor trust was created on or about June 9, 2011, to which plaintiff Meridian Financial Advisors, Ltd.

was appointed as trustee (the "Creditor Trust").  (See Case No. 12-02353-JAD,
Doc. # 1, ¶¶ 9-10).[1]

On September 6, 2012, the Creditor Trust initiated the Adversary
Proceeding by filing a complaint (the "Complaint"), claiming that the Debtor
fraudulently transferred estate property to the Defendants in connection with
proposed renovations to the Pittsburgh Hilton Hotel (the "Hotel"), which the
Debtor operated prior to filing for bankruptcy.  (See Doc. # 1).  In the
Complaint, the Creditor Trust specifically avers that on or about May 19, 2006,
the Debtor obtained a $42,700,000 loan from Column Financial, Inc. to fund
renovations to and the purchase of the Hotel from Hilton Hotels Corporation.
(See id. at ¶ 18).  The Creditor Trust further asserts that on or about May
2006, the Debtor contracted with the Defendants to provide goods and/or
services related to the Hotel renovations (see id. at ¶ 21), and between June
2006 and November 2007, Contract Purchase & Design, Inc. and/or C&M
Installations, Inc. received either directly or indirectly over $13,000,000 for
goods and services allegedly provided to the Debtor for renovations to the Hotel
(see id. at ¶ 22).

Subsequently, on or about August 17, 2007, the Debtor refinanced its
loan with Column Financial, Inc., increasing the loan balance to $49,600,000,
of which $4,800,000 was earmarked to fund a physical expansion of the Hotel
(the "Expansion Reserve").  (See id. at ¶¶ 23-24).  On or about October 12,
2007, $2,464,109 from the Expansion Reserve was wire transferred directly to

---

[1] All subsequent docket references refer to Case No. 10-02353-JAD unless
otherwise specifically noted.

Contract Purchase & Design, Inc. and/or C&M Installations, Inc. (the "Transfer"). (See id. at ¶ 26). The gravamen of the Creditor Trust's Complaint is that the Debtor received no goods or services of value from Contract Purchase & Design, Inc. and/or C&M Installations, Inc. in exchange for the Transfer. (See id. at ¶ 28). The Creditor Trust alleges that the Defendants have been unjustly enriched, and seeks to avoid and recover the value of the Transfer pursuant to the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S.A. §§ 5104(a)(1), 5104(a)(2), and 5105.

After the filing of the Complaint, the parties filed a *Stipulation to Extend Time for Defendants to File an Answer to the Complaint* on October 9, 2012, and a second stipulation to further extend the time on November 7, 2012. (See Doc. ## 6, 8). The Defendants then filed a *Motion to Extend Time for Filing a Response to the Complaint* on November 29, 2012. (See Doc. # 9). On the same day, Mr. Lewis filed a *Motion to Intervene and Motion to Stay Adversary Proceedings* (see Doc. # 10), which he re-filed at the Court's request to correctly file as a two-part motion on December 6, 2012 (see Doc. # 13). The Court granted the Defendant's *Motion to Extend Time for Filing a Complaint* on December 4, 2012, extending the deadline to file a response for a period of thirty days following the determination on the *Motion to Intervene* and the *Motion to Stay the Adversary*. (See Doc. # 12).

In Mr. Lewis' *Motion to Intervene* and *Motion to Stay the Adversary* filed on December 6, 2012, Mr. Lewis asserts that his indictment in a pending criminal matter necessitates his intervention in the Adversary Proceeding. Mr.

-4-

Lewis' request to intervene is made pursuant to 11 U.S.C. § 1109(a) and Fed. R. Civ. P. 24 (made applicable to the Adversary Proceeding by Fed. R. Bankr. P. 7024), and his stay request is made pursuant to the Fifth Amendment of the United States Constitution and Fed. R. Civ. P. 26 (made applicable to the Adversary Proceeding through Fed. R. Bankr. P. 7026). (See Doc. # 13, ¶ 4).

On or about October 9, 2012, Mr. Lewis and Mr. Atul Bisaria ("Mr. Bisaria")[2] were indicted in the United States District Court for the Northern District of Illinois at Case No. 12-CR-791 (the "Criminal Proceeding"). (See Doc. # 13, Exhibit C, hereinafter the "Indictment"). The Indictment includes ten counts against Mr. Lewis and Mr. Bisaria and a forfeiture allegation for wire fraud and bank fraud in violation of 18 U.S.C. §§ 1343, 1014, and 2. Specifically, the indictment alleges that Mr. Lewis and Mr. Bisaria participated in a scheme to defraud Broadway Bank of Chicago, Illinois and Mutual Bank of Harvey, Illinois by falsely representing that loan proceeds from those banks were to be used to pay for renovations at the Ramada Plaza Hotel in Cincinnati, Ohio and the Doubletree Guest Suites in Boca Raton, Florida, when in fact the funds were diverted for other purposes. (See Indictment, ¶ 3, 11, 15, 17, 22, 26, and 33-35). Mr. Lewis asserts that his intervening in and staying of the Adversary Proceeding is necessary because the Criminal Proceeding involves issues "substantiality related to the claims and defenses in this [A]dversary

---

[2] The Creditor Trust also filed a separate adversary proceeding within the Lead Bankruptcy Case against Mr. Bisaria at Case No. 12-02357-JAD, alleging in its complaint therein that Mr. Bisaria, the sole officer and member of the Debtor, caused the Debtor to fraudulently transfer funds to Bisaria himself and to Shubh Hotels, LLC.

[P]roceeding," and as such, "will each require Lewis' presence and participation, and involve many of the same documents, issues, claims and defenses." (See Doc. # 13, ¶ 1).

The Creditor Trust filed an *Objection* to the motions on January 22, 2013. (See Doc. # 20). The Defendants filed a *Supplemental Response and Joinder to Mr. Lewis' Motion to Intervene* on the same day. (See Doc. # 21). A hearing was held January 29, 2013. Parties filed Post-Trial Briefs on February 12, 2013, and Replies on February 19, 2013. (See Doc. ## 24, 25, 27, 28).[3] The matter is now ripe for decision.

## II.

As a preliminary matter, the Court will address the Creditor Trust's argument that Mr. Lewis failed to attach a pleading and assert a claim or defense, thereby failing to comply with the requirements of Fed. R. Civ. P. 24(c). Pursuant to Rule 24(c), "[a] motion to intervene . . . must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." It is undisputed that Mr. Lewis did not attach a pleading to his motion. Because Mr. Lewis did not attach pleading, and also because he has not articulated any claim or defense that relates to the underlying substance of the Complaint, the Court denies Mr. Lewis' *Motion to Intervene* as procedurally deficient.

Failure to comply with the requirements of Rule 24(c) will generally result in the denial of a motion to intervene. See Township of S. Fayette v. Allegheny

---

[3] The Defendants and Mr. Lewis jointly filed their Post-Trial Brief and Reply. (See Doc. ## 24, 28).

County Housing Authority, 183 F.R.D. 451 (W.D.Pa. 1998), affirmed 185 F.3d 863 (3d Cir. 1999) (motion to intervene dismissed when movants did not submit the requisite proposed pleading); School Dist. Of Philadelphia v. Pennsylvania Milk Marketing Bd., 160 F.R.D. 66 (E.D.Pa. 1995) (motion to intervene denied for failure to attach a pleading setting forth the claim or defense for which intervention was sought). However, courts have not required strict compliance with Rule 24(c) in certain circumstances. See, e.g., William v. Taylor, 465 F.Supp.2d 1267, 1273 n. 3 (N.D.Ga. 2000) (motion to intervene granted despite failure to attach complaint where intervenor's claims were identical to plaintiffs', intervention would not unduly delay or prejudice rights of original parties, and the intervenor attached proposed complaint with explanation of the claims to a reply brief); McCausland v. Shareholders Management Co., 52 F.R.D. 521 (S.D.N.Y. 1971) (failure to attach a pleading to motion to intervene not fatal when affidavit in support stated that proposed intervenors would adopt the present complaint).

    For example, the Defendants and Mr. Lewis directed the Court's attention to U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co., 239 F.R.D. 404, 413 (W.D. Pa. 2006), where the court granted a motion to intervene despite the intervenor's failure to attach a pleading. The Defendants and Mr. Lewis assert that the instant case is similar to that of Sheesley, where there was a "sufficient commonality of law or facts underl[ying] the applicant's claim and the main action." (See Doc. # 24, p. 8, citing Sheesley, 239 F.R.D. at 414). However, the Creditor Trust argues that this case is easily

distinguishable from <u>Sheesley</u>, where "there was no real prejudice to the
[original parties] in waiving the procedural requirements of Rule 24(c)," since
"the underlying dispute moved forward in another forum, [specifically]
arbitration." (<u>See</u> Doc. # 25, p. 5). The Creditor Trust asserts that "in this
matter, Mr. Lewis seeks to intervene and stay the underlying dispute for an
indefinite period of time potentially resulting in great prejudice to the Creditor
Trust." (<u>See</u> <u>id</u>.). The Court finds <u>Sheesley</u> distinguishable from the instant
case, because there is not a sufficient commonality of law or facts underlying
the Adversary Proceeding and the Criminal Proceeding, and because the
Creditor Trust would be prejudiced.

Unlike in <u>Sheesley</u>, here there is no threat of multiple suits because there
is no unity of interest between the two proceedings. "Rule 24 is meant to
prevent the . . . multiplicity of suits." 239 F.R.D. at 415, citing <u>Wash. Elec.
Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.</u>, 922 F.2d 92, 97 (2d Cir.1990)
("The purpose of the rule allowing intervention is to prevent a multiplicity of
suits where common questions of law or fact are involved."). "Rather than have
different tribunals examine these issues at different times, notions of judicial
economy suggest aggregating them in a single proceeding." 239 F.R.D. at 415.
Here, the Court has not been persuaded that there are common questions of
law or fact among the two proceedings.

The movant in <u>Sheesley</u> was asking "for a stay in [the] litigation and for
an order compelling [the original plaintiff] to arbitrate its grievances." 239
F.R.D. at 408. Because "a plethora of questions to be raised in a potential

arbitration proceeding [were] common with the issues in the main . . . action,"
and the claims presented in the complaint in the main action "share[d] the
same factual history" with any cross-claim that could be raised in arbitration,
the Sheesley court found that "[i]dentical questions [would] ground the
defenses available in [the court] and the claims that the [a]pplicant may bring
before an arbitrator." 239 F.R.D. at 414.

Here, the Criminal Proceeding and the Adversary Proceeding do not share
common questions of law or fact, and there is no overlap of issues or parties.
The Criminal Proceeding involves allegations that Mr. Lewis defrauded two
banks located in Illinois by falsely representing that loan proceeds from those
banks were to be used to pay for renovations at the Ramada Plaza Hotel in
Cincinnati, Ohio and the Doubletree Guest Suites in Boca Raton, Florida, when
in fact the funds were diverted for other purposes. (See Indictment, ¶ 3, 11,
15, 17, 22, 26, and 33-35). The Adversary Proceeding, meanwhile, involves
different defendants, a loan from a different bank, and renovations to a
different hotel than those in the Criminal Proceeding. Specifically, the Creditor
Trust's Complaint alleges that the Defendants were unjustly enriched by an
alleged fraudulent transfer of estate property from the Debtor in connection
with proposed renovations to the Pittsburgh Hilton Hotel. Mr. Lewis' actions
regarding the Transfer in the Adversary Proceeding are not at issue in the
Criminal Proceeding, nor are his actions regarding the fraud allegations within
the Criminal Proceeding at issue in in the Adversary Proceeding. There is no

threat here of multiplicity of suits, as there was in <u>Sheesley</u>.  The instant case does not present the situation that Rule 24 is meant to prevent.

Furthermore, the <u>Sheesley</u> court acknowledged that when courts waive procedural defects under Rule 24, such waiver "is often prompted by the merits of the motion itself, the lack of prejudice to the parties, and the principle that Rule 24 is intended simply to notice the parties as to the applicant's position and arguments." 239 F.R.D. at 411.  Waiving Mr. Lewis' failure to attach a pleading is not appropriate here, where the Court agrees with the Creditor Trust that they would be prejudiced by an indefinite delay.

Mr. Lewis is asking for a stay of the litigation for an indefinite period, during which time the Creditor Trust would not be able to pursue its claims against the Defendants in another forum.  Not only would a stay delay the Adversary Proceeding, but also the Lead Bankruptcy Case, which the Creditor Trust avers is "moving toward conclusion," as "most of [the other] adversary proceedings associated with the bankruptcy case have been resolved to date," and "the [P]lan has been confirmed." (<u>See</u> Doc. # 20, pp. 12-13, ¶ 57; <u>see also</u> Case No. 10-26337-JAD, Doc. # 1390).  The Court also notes that during a stay of the Adversary Proceeding and Bankruptcy Case, the Debtor's estate would be required to continue paying quarterly fees to the United States trustee for each quarter until the case is converted or dismissed.  <u>See</u> 28 U.S.C. § 1930(a)(6).  The longer the case is stayed, the greater the statutory fees that must be paid under this provision by the estate, thus reducing the amount of estate funds available for the Creditor Trust to enforce and prosecute the

Debtor's obligations.  Because the Creditor Trust is prejudiced by an indefinite

delay of the Adversary Proceeding, waiver of Mr. Lewis' procedural defect is not

appropriate in the instant case.[4]

Mr. Lewis' *Motion to Intervene* is also procedurally deficient because it

does not set out a claim or defense related to the existing case, as required by

Rule 24(c).  "The words 'claim or defense' manifestly refer to the kinds of claims

or defenses that can be raised in courts of law as part of an actual or

impending law suit."  <u>Diamond v. Charles</u>, 476 U.S. 54, 76-77, 106 S. Ct.

1697, 1711, 90 L. Ed. 2d 48 (1986) (internal citations omitted).  Here, Mr.

Lewis has simply not raised any claim or defense; he has only asserted that he

seeks to intervene for the limited purpose of staying the proceeding.

Thus, the Court finds that Mr. Lewis' *Motion to Intervene* is procedurally

deficient in that if fails to conform with Fed. R. Civ. P. 24(c).

### III.

Even if Mr. Lewis' *Motion to Intervene* were proper, it is deficient in

substance.  Mr. Lewis seeks to intervene under Fed. R. Civ. P. 24(a), which

provides:

> On timely motion, the court must permit anyone to
> intervene who: (1) is given an unconditional right to
> intervene by federal statute; or (2) claims an interest
> relating to the property or transaction that is the

---

[4] The Court further notes that the Criminal Proceeding was continued on May 7, 2013, when the Honorable John Z. Lee in the United States District Court for the Northern District of Illinois granted Mr. Lewis' oral motion "for additional time to review extensive discovery due to the complexity of the case." (<u>See</u> Case No. 12-CR-791, Doc. # 37).

> subject of the action and is so situated that disposing
> of the action may as a practical matter impair or
> impede the movant's ability to protect its interest,
> unless existing parties adequately represent that
> interest.

For the reasons set forth below, the Court denies Mr. Lewis' request to intervene under both Rule 24(a)(1) and 24(a)(2).

### A.

Pursuant to Rule 24(a)(1), courts must allow parties to intervene that hold an unconditional right to intervene pursuant to federal statute.  The Third Circuit has determined that parties in interest have an absolute right to intervene in adversary proceedings pursuant to Rule 24(a)(1) and 11 U.S.C. § 1109(b).  Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1128 (3d Cir. 1994); Official Unsecured Creditors Comm. v. Michaels (In re Marin Motor Oil, Inc.), 689 F.2d 445 (3d Cir. 1982).  Mr. Lewis asserts that he has an unconditional right to intervene pursuant to 11 U.S.C. § 1109(b), and thus must be permitted to intervene under Rule 24(a)(1).  Section 1109(b) asserts:

> A party in interest, including the debtor, the trustee, a
> creditors' committee, an equity security holders'
> committee, a creditor, an equity security holder, or any
> indenture trustee, may raise and may appear and be
> heard on any issue in a case under this chapter.

Because the Court finds that Mr. Lewis is not a "party in interest" under section 1109(b), the Court denies his request to intervene under Rule 24(a)(1).

While the term "party in interest" is not statutorily defined, section 1109(b) lists several examples of parties that are considered "parties in interest," including "the debtor, the trustee, a creditors' committee, an equity

-12-

security holders' committee, a creditor, an equity security holder, or any indenture trustee." 11 U.S.C. § 1109(b). It is clear that this is not an exhaustive list of parties that may be "parties in interest." In re Combustion Eng'g, Inc., 391 F.3d 190, 214 n. 21 (3d Cir. 2004). "Consequently, courts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." In re Amatex Corp., 755 F.2d 1034, 1042 (3d Cir. 1985).

In the instant case, the Defendants and Mr. Lewis assert that Mr. Lewis has a sufficient stake in the Adversary Proceeding which requires representation for the following reasons:

> (i) without [Mr.] Lewis' participation in the defense of the [Adversary Proceeding], [the Defendants] "are effectively and completely defenseless; (ii) in the event this Court should make any .. adverse inferences against [the Defendants] as a result of [Mr.] Lewis' temporary inability to assist in the defense of the [Adversary Proceeding], a judgment will likely be entered against [the Defendants]; and (iii) any such judgment will likely be in an amount that would cripple the businesses, resulting in their dissolution and destruction, as well as Lewis' inability to continue to earn a living.

(See Doc. # 24, p. 6).

The Creditor Trust, however, argues that Mr. Lewis does not have a sufficient stake in the outcome of the Adversary Proceeding because his interest is "contingent" and solely regards impairment of "his personal rights." (See Doc. # 20, p. 6, ¶ 25).[5] The Court agrees with the Creditor Trust that Mr.

_____

[5] The Creditor Trust also argues that Mr. Lewis fails to prove that he has a sufficient stake which requires representation because "any interest Mr. Lewis

Lewis does not have a sufficient stake as required under section 1109(b), because Mr. Lewis has not persuaded this Court that his reasons for intervening constitute "legally protected interests" that could be affected by the Adversary Proceeding.

In In re Global Industrial Technologies, Inc., the Third Circuit adopted a test set forth by the Seventh Circuit to define a party in interest as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." 645 F.3d 201, 210 (3d Cir. 2011), citing In re James Wilson Associates, 965 F.2d 160, 169 (7th Cir. 1992). Using that definition of "party in interest," the Global Industrial Technologies court held that the debtor's insurers, whose policies were to be transferred to a settlement trust under the debtor's chapter 11 plan, had standing to challenge the plan as parties in interest because they had legally protected interests which were affected by the debtor's plan. See also In re Combustion Eng'g, Inc., 391 F.3d 190 (3d Cir. 2004) (debtor's insurers did not have standing to object to confirmation of debtor's chapter 11 plan where a confirmation plan did not materially alter the insurers liability). Mr. Lewis fails to be a party in interest under this test.

None of the three arguments presented by the Defendants and Mr. Lewis assert a legally protected interest that could be affected by this proceeding. The first two relate to the Defendants' interest in having Mr. Lewis testify,

_____

might have in the Adversary Proceeding is being adequately represented by the Defendants and would not require that he be separately represented." (See Doc. # 20, p. 6, ¶ 25). The Court reaches the issue of adequate representation in its analysis of Mr. Lewis' request to intervene pursuant to Rule 24(a)(2), and finds that any interest Mr. Lewis has in the Adversary Proceeding is adequately represented by the Defendants.

-14-

rather than an interest of Mr. Lewis himself.  In as much as the first two arguments could relate to Mr. Lewis' own interest in the Adversary Proceeding, they concern only Mr. Lewis' economic interests in his companies.  "A mere economic interest in the outcome of the litigation is [generally] insufficient to support a motion to intervene." Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1996), citing U.S. v. Alcan Aluminum Inc., 25 F.3d 1174, 1185 (3d Cir. 1994).  Because Mr. Lewis' interest in the financial viability of his companies is merely economic, it is not a "sufficient stake" in the Adversary Proceeding to warrant intervening.

Similarly, the third argument, although phrased as a personal interest of Mr. Lewis, also fails to support the *Motion to Intervene*.  Mr. Lewis' personal interest in continuing to operate his businesses is an economic concern, and does not present a legally protected interest which could be affected by this proceeding.  The Court therefore finds that Mr. Lewis is not a party in interest under section 1109(b).

Moreover, Mr. Lewis and the Defendants have not presented this Court with any case where a shareholder of a defendant was found to have standing to intervene in a chapter 11 bankruptcy proceeding.  The Court finds persuasive the case of In re WHET, Inc., 33 B.R. 438, where the court found that the chief executive officer and president of the debtor did not have standing to be heard in a chapter 11 case.  33 B.R. 438, 442 (Bankr. D. Mass. 1983).  The In re WHET, Inc. court looked to In re O.P.M. Leasing Services, Inc., 21 B.R. 983, for guidance in determining whether officers of a corporation

-15-

have standing.  The In re O.P.M. Leasing Services, Inc. court held that a former president of a chapter 11 debtor and 50% owner of the company which was the sole shareholder of the debtor was not a party in interest under section 1109(b); the movant's former position as an officer of the debtor did not create any inherent rights in the bankruptcy case.  33, B.R. 438, 442, citing In re O.P.M. Leasing Services, Inc., 21 B.R. 983 (D.N.Y. 1981).  The In re WHET, Inc. court extended this reasoning to current officers, finding that the debtor's president and chief executive officer did not have standing in that debtor's bankruptcy case.  Id.  Similarly, Mr. Lewis' role as a shareholder of the debtor does not create any basis for standing in the debtor's chapter 11 Bankruptcy Case or the Adversary Proceeding.[6]

Thus, the Court denies Mr. Lewis' request to intervene pursuant to Rule 24(a)(1) and section 1109(b).

**B.**

The Court also denies Mr. Lewis' request to intervene under Rule 24(a)(2), as he fails to satisfy the four part test applied by courts in the Third Circuit to determine whether an applicant may intervene in an action as of right.

---

[6] The Court also notes the similarity of this case to In re Refco, Inc., where the Second Circuit Court of Appeals found that a debtor's investors were not a party in interest under section 1109(b).  505 F.3d 109, 117 (2nd Cir. 2007). The Refco court held that although debtor's investors "maintain a financial 'interest' in [the debtor entity], they are not a party in interest within the meaning of the Bankruptcy Code"; rather, "[t]he party in interest in the bankruptcy sense, representing the investors' financial interest, is [the debtor entity]".  Id.

An applicant is entitled to intervene under Rule 24(a)(2) when: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987) (citation omitted). Although these requirements are intertwined, each must be met to intervene as of right. Id. The applicant bears the burden of demonstrating that it has met all four prongs. Development Finance Corp. v. Alpha Housing & Health, 54 F.3d 156, 162 (3d Cir.1995), United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1181 n. 9 (3d Cir.1994). As the first factor, timeliness, is not in dispute, the Court will analyze factors two through four below.

Regarding the second factor, a "sufficient interest in the litigation," the Supreme Court has determined that an intervenor's interest must be one that is "significantly protectable." Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). In defining a "significantly protectable" legal interest under Rule 24(a)(2), Third Circuit courts have held that "the interest must be a legal interest as distinguished from interests of a general and indefinite character," and "[t]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." Mountain Top Condominium Association, Inc. v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir.1995), citing Harris v. Pernsley,

-17-

820 F.2d at 601 (citations omitted).  "This interest is recognized as one belonging to or being owned by the proposed intervenor."  <u>Mountain Top</u>, 72 F.3d at 366, citing <u>United States v. Alcan Aluminum, Inc.</u>, 25 F.3d 1174, 1185 (3d Cir.1994).  The issue is whether Mr. Lewis is a real party in interest.  <u>Harris v. Pernsley</u>, 820 F.2d at 596-598.  <u>See also</u> <u>United States v. Alcan Aluminum, Inc.</u>, 25 F.3d 1174, 1185 (3d Cir. 1994) ("a party has more than an economic interest where it is the real party in interest and where the applicant would have standing to raise the claim.");  <u>Mr. Hawley Ins. Co. v. Sandy Lake Properties</u>, 425 F.3d 1308, 1322 (11th Cir., 2005) ("a legally protectable interest is something more than an economic interest . . .[; t]hus, a legally protectable interest is an interest that derives from a legal right.").

The Court notes the similarity of the second <u>Harris v. Pernsley</u> factor to the requirements for intervening under section 1109(b) and Rule 24(a)(1) discussed above.  Just as Mr. Lewis failed to prove to the Court that he was not a party in interest under section 1109(b), he again fails to persuade the Court that he is a real party in interest under Rule 24(a)(2).

Here, the original Defendants are the real parties in interest, not Mr. Lewis.  Because Mr. Lewis has not met his burden in proving to the Court that his interest in the outcome of the litigation is not merely economic or that there is a tangible threat to a legally cognizable interest, he fails to satisfy the second <u>Harris v. Pernsley</u> factor.

Because Mr. Lewis does not have a legally protectable interest giving rise to a right to intervene, he also fails to satisfy the third factor, which requires

that such interest will be impaired by the disposition of the action.  The only non-economic interest Mr. Lewis has asserted which is arguably derived from a legal right is that he must choose between exercising his Fifth Amendment right to avoid self-incrimination and testifying on behalf of his companies.[7]  But even if the Court were to consider this choice to invoke the Fifth Amendment privilege an "interest" sufficient to satisfy the second Harris v. Pernsley factor, because Mr. Lewis maintains the ability to invoke the privilege, the Court finds that such interest is not impaired for purposes of 24(a)(2).

In determining whether an interest may be affected or impaired within the meaning of Rule 24(a)(2), the court must assess "the practical consequences of the litigation," and "may consider any significant legal effect on the applicant's interest." Brody By and Through Sugzdinis v. Spang, 957 F.2d 1108, 1123 (3d Cir.1992) (citations and internal quotations omitted).  It is not sufficient that the claim be incidentally affected; rather, there must be "a tangible threat" to the applicant's legal interest. Id.; see also Development Finance Corp. v. Alpha Housing and Health Care, Inc., 54 F.3d at 162.  Since Mr. Lewis is still able to assert his Fifth Amendment right, his interest in asserting his right to avoid self-incrimination is not affected or impaired as a practical matter by the disposition of the action for purposes of Rule 24(a)(2).  Thus, even if the Court were to determine that Mr. Lewis' decision between two

---

[7] The Court considers this issue as a potential argument for a legal interest for purposes of intervention under Rule 24(a)(2), although Mr. Lewis does not argue this point directly in support of his *Motion to Intervene*, but rather in support of his *Motion to Stay*.

choices constitutes an interest derived by a legal right, Mr. Lewis still could not satisfy the third Harris v. Pernsley factor.

Lastly, the Court finds that Mr. Lewis' interests are adequately represented by the original Defendants, because their interests are presumed to be one and the same. The "burden ... is on the applicant for intervention to show that his interests are not adequately represented by the existing parties." In re Sheesley, 239 F.R.D. at 409, citing Brody, 957 F.2d at 1123. Though often minimal, the burden can rise when the interests of an existing party are presumed coincident with those of the potential intervenor. "[W]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig., 418 F.3d 277, 315 (3d Cir.2005). In order to overcome the presumption of adequate representation, "the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit." Id. See also Gen. Star Indem. Co. v. V.I. Port Auth., 224 F.R.D. 372, 376 (D.Vi.2004) ("Because any interest [p]roposed [i]ntervenors have or may have is identical to [the defendant's], there must be a concrete showing of circumstances in the particular case that make the representation inadequate." (internal citations omitted)). Here, Mr. Lewis has not asserted any adversity of interest, collusion, or nonfeasance which would overcome the presumption of adequate representation, and the Court therefore finds that any interest Mr.

Lewis has in the Adversary Proceeding is adequately represented by the existing Defendants.

Lastly, Mr. Lewis asserts that without his "direct involvement in the litigation in his capacity as [the Defendant's] sole shareholder and director, president, and the person most familiar with the day to day operations of the corporate entities, . . . [the Defendants] . . . cannot adequately protect [Mr.] Lewis without his direct and intimate involvement in the [Adversary Proceeding]." (See Doc. # 24, p. 7). While the Court appreciates the Defendants' interest in Mr. Lewis' ability to testify freely to bolster their case, the Court does not find persuasive the argument that the Defendants cannot defend the Adversary Proceeding without Mr. Lewis' testimony. A transfer of funds in exchange for a service generally requires both a transferor and a transferee. It is logical to conclude that persons other than solely Mr. Lewis must have been involved in the Hotel's expansion project, such as employees of the Hotel, employees of the Defendants, and employees of the Debtor. As such, the Court is not convinced that Mr. Lewis is the only person capable of being called as a witness to testify to the circumstances surrounding the Transfer at issue in the Adversary Proceeding.

For these reasons, the Court finds that Mr. Lewis' interests are adequately represented without allowing him to intervene in the Adversary Proceeding. The Court denies Mr. Lewis' request to intervene pursuant to Rule 24(a)(2).

## IV.

Mr. Lewis also seeks to intervene under Rule 24(b), under which courts may permit anyone to intervene who "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).[8] The Court finds intervening pursuant to Rule 24(b) is inappropriate in the instant case.

Mr. Lewis asserts section 1109 provides him with a conditional right to intervene under Rule 24(b)(1)(A).    The Court first finds Rule 24(b)(1)(A) inapplicable, as the Court determined in its analysis under Rule 24(a)(1) that Mr. Lewis is not a party in interest under section 1109; thus, such statute does not provide Mr. Lewis a right, either conditionally or unconditionally, to intervene.

Mr. Lewis' intervening is also inappropriate under Rule 24(b)(1)(B), under which "the movant must have a 'claim or defense' against the defendants with questions of fact or law in common with the main action-not just a general interest in its subject matter or outcome." Abney v. I.T.T. Diversified Credit Corp. (In re Environmental Electronics Systems, Inc.), 11 B.R. 962, 964 (Bankr. N.D. Ga. 1981), citing 3B MOORES FEDERAL PRACTICE P 24.10(2) at p. 24-

---

[8] The Creditor Trust points out that the Defendants' and Mr. Lewis' jointly-filed post-trial brief "was the first time [they] asserted that Mr. Lewis should be permitted to intervene pursuant to Rule 24(b) as no mention of intervention pursuant to Rule 24(b) was set forth in the [m]otion" and [t]hat, alone, is enough to deny this request for intervention pursuant to Rule 24(b)." (See Doc. # 27, p. 4). The Court will address the request to intervene pursuant to Rule 24(b) notwithstanding the failure to include such request in the *Motion to Intervene*.

352 (1977).  As discussed within the Court's analysis of Mr. Lewis' failure to comply with Rule 24(c)'s pleading requirements, Mr. Lewis has not presented any claim or defense, but merely seeks to intervene for the limited purpose of staying the Adversary Proceeding.  As such, Mr. Lewis has not asserted a claim or defense against the Creditor Trust which has questions of law or fact in common with the main action for purposes of intervening under Rule 24(b)(1)(B).  (See Doc. # 27, p. 5).

Furthermore, pursuant to Rule 24(b)(3), in exercising the discretion afforded to the courts under Rule 24(b), "a court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  The Court has determined that allowing Mr. Lewis to intervene for the sole purpose of pursuing a stay of the proceeding would unduly delay both the Adversary Proceeding and the Lead Bankruptcy Case, resulting in prejudice to the Creditor Trust.  In the interest of encouraging judicial efficiency and in light of Rule 24(c), the Court denies Mr. Lewis' request to intervene pursuant to Rule 24(b).

**V.**

Finally, Mr. Lewis requests a stay of the Adversary Proceeding under Fed. R. Civ. P. 26(c),[9] which provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the

---

[9] The Creditor Trust asserts that Rule 26 is not yet applicable to the instant case, since "this matter has not reached the discovery phase because the Defendants have not yet filed a response to the Complaint."  The Court agrees, but nonetheless includes its analysis of Mr. Lewis' request to stay the proceedings.

action is pending--or as an alternative on matters
relating to a deposition, in the court for the district
where the deposition will be taken.

Even if the Court were to find that Mr. Lewis has the right to and is permitted

to intervene, it would deny Mr. Lewis' request to stay the Adversary Proceeding.

"A stay of a civil case is an extraordinary remedy." Walsh Sec., Inc. v.

Cristo Prop. Mgmt., Ltd., 7 F. Supp. 2d 523, 526 (D.N.J. 1998) (internal

citations omitted). Furthermore "[a] stay of a civil proceeding during the

pendency of a criminal proceeding is not constitutionally required." DeVita v.

Sills, 422 F.2d 1172, 1181 (3d Cir.1970). Rather, a stay may be granted as

"incidental to the power inherent in every court to control the disposition of the

causes on its docket with the economy of time and effort for itself, for counsel

and for litigants. How this can best be done calls for the exercise of judgment,

which must weigh competing interests and maintain an even balance." Landis

v. North American Co., 299 U.S. 248, 254–55, 57 S.Ct. 163, 166, 81 L.Ed. 153

(1936).

Mr. Lewis asserts that "[a] stay of the Adversary Proceeding is necessary

(A) to protect [his] right against self-incrimination under the Fifth Amendment

of the United States Constitution, and (B) to avoid confusion and the

consumption of judicial resources associated with resolving logistical and legal

questions arising from the simultaneous progression of these cases and the

consequences associated with the invocation of the Fifth Amendment." (See

Doc. # 13, ¶ 2). The Court disagrees with Mr. Lewis that a stay of the

Adversary Proceeding is necessary in this instance.

First, Mr. Lewis' Fifth Amendment right against self-incrimination is not impaired, as he is able to assert it in the Adversary Proceeding. See Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co., 14 F.R.D. 333, 334 (E.D. Pa 1953) (while corporations do not have Fifth Amendment privileges, a witness called to testify regarding the conduct of a corporation or on its behalf may be entitled to invoke the Fifth Amendment privilege for himself).

Further, application of the factors commonly used by courts to decide whether to grant a stay in similar circumstances mitigates against granting the requested relief. Both parties direct the Court to In re Adelphia, which held:

> In deciding whether to stay a civil case pending the resolution of a criminal case, courts often consider the following factors: (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been indicted; (3) the plaintiff's interest in the expeditious civil proceedings weighed against the prejudice to the plaintiff caused by delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest.

In re Adelphia Communs. Sec. Litig., 2003 U.S. Dist. LEXIS 9736, *7 (E.D. Pa May 14, 2003), citing Walsh Securities Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp. 2d 523 (D.N.J. 1998). See also Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc., 87 F.R.D. 53, 65 (E.D. Pa. 1980) (presenting similar factors). Mr. Lewis has failed to satisfy these factors to sufficiently compel the Court to stay the Adversary Proceeding pending the outcome of the Criminal Proceeding.

Most significantly, the Court finds that the extent to which the issues in the civil and criminal cases overlap is minimal. See In re Adelphia, 2003 U.S.

Dist. LEXIS 9736 at *8, citing <u>Walsh Securities</u>, 7 F. Supp. 2d at 527 ("The similarity of issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay."). Mr. Lewis and the Defendants assert that "[s]imilar to the allegations against [the Defendants] in the [Adversary Proceeding], the basis for liability against Lewis in the [C]riminal [P]roceeding involves the alleged transfer of bank loan proceeds to entities controlled by Atul Basaria." (<u>See</u> Doc. # 24, p. 2). The Court, however, agrees with the Creditor Trust, who "submits that the issues in the Adversary Proceeding are distinguishable from those in the Criminal Proceeding in that the Transfer at issue is a different transaction than that in the Criminal Proceeding and involved different parties." (<u>See</u> Doc. # 20, p. 12, ¶ 52).

As discussed above, the Criminal Proceeding and the Adversary Proceeding involve different defendants, different banks, and different hotels. Mr. Lewis' actions regarding the Transfer in the Adversary Proceeding are not at issue in the Criminal Proceeding, nor are his actions regarding the fraud allegations within the Criminal Proceeding at issue in in the Adversary Proceeding. Therefore, the Court finds the first <u>Adelphia</u> factor is not satisfied, as the overlap of issues among the proceedings is insufficient to warrant a stay.

Mr. Lewis also cannot satisfy the second factor, under which courts are to consider the status of the criminal proceedings, including whether any defendants have been indicted. Generally, stays are issued in civil proceedings against defendants also facing criminal charges. "If criminal indictments are

returned against the civil defendants, then a court should strongly consider staying the civil proceedings until the related criminal proceedings are resolved." In re Adelphia, 2003 U.S. Dist. LEXIS 9736 at * 9, citing Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 203 (1989). This scenario does not apply to this instant case, where a criminal indictment was brought against Mr. Lewis, who is not a defendant in the Adversary Proceeding. Therefore, the Court agrees with the Creditor Trust that "this factor weighs against instituting a stay in the Adversary Proceeding." (See Doc. # 20, p. 13, ¶ 55).

In evaluating the third factor, the plaintiff's burden resulting from the stay, "courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim . . . Instead, the plaintiff should demonstrate a particular unique injury, such as the dissipation of assets or an attempt to gain an unfair advantage from the stay." In re Adelphia, 2003 U.S. Dist. LEXIS 9736 at *10-11 (internal citations omitted).

The Creditor Trust argues that there exists a potential for dissipation of assets in this case (see Doc. # 20, p. 14, ¶ 58), although Mr. Lewis and the Defendants assert a willingness to stipulate to an order "mandating that there be no such dissipation of assets, expenditures or encumbrances outside the ordinary course of business going forward" (see Doc. # 28, p. 2). While the Court realizes that such a stipulation is not a strict guarantee against the dissipation of assets, it does mitigate against weighing this factor towards denying the stay.

The Creditor Trust also argues that they would be further prejudiced by a stay, as they could potentially "have to get in line behind any judgment and/or forfeiture obtained against [Contract Purchase & Design, Inc.] in the [C]riminal [Proceeding]." (See Doc. # 20, ¶ 58). However, the Indictment is against Mr. Lewis, not the Defendants, and does not include any claim against the Defendants nor any grounds to pursue a judgment therefrom. Further, the forfeiture allegation is based on 18 U.S.C. § 982(a)(2)(A) and 21 U.S.C. § 853(p), which provide, in part, for forfeiture of "substitute property" of the named defendant, but not from a third-party recipient of such property. Thus, the Court finds this argument unsupportive of the third Adelphia factor in this case.

However, as discussed above, the Creditor Trust convincingly argues that a stay will not simply delay its right to expeditiously pursue its claim in the Adversary Proceeding, but will also delay the Lead Bankruptcy Case itself, resulting in increased trustee and administrative fees. Thus, the Court finds this third factor does weigh in the Creditor Trust's favor, based on the Creditor Trust's interest in seeing both the Adversary Proceeding and the Lead Bankruptcy Case to timely resolutions.

Mr. Lewis also fails to satisfy fourth Adelphia factor, which considers the burden on the defendants. The Adelphia court found this factor satisfied since the defendants in the civil case were "already under criminal indictment in a case concerning identical allegations and issues," and so "they face[d] substantial risks of self-incrimination." In re Adelphia, 2003 U.S. Dist. LEXIS

-28-

9736 at *14.   Here, as the Court has stressed throughout this *Memorandum Opinion*, Mr. Lewis is only a defendant in the Criminal Proceeding, which does not concern allegations and issues identical to those in the Adversary Proceeding.

Mr. Lewis and the Defendants also assert that "[t]he request for a stay is needed not just to protect Lewis' interests," but also "in order to preserve [the Defendant's] ability to competently defend the [Adversary Proceeding] and ensure the absence of any substantial prejudice of their rights." (See Doc. # 24, p. 12).   However, the fact remains that the Criminal Proceeding and the Adversary Proceeding do not involve the same defendants, and therefore the Court is not presented with the usual concern courts consider when analyzing the burden on defendants in denying a stay.   See also Chorches v. Ogden (In re Bolin & Co., LLC), 2012 U.S. Dist. LEXIS 128446, *7-8 (D. Conn June 27, 2012) ("In the usual case, the concern is that a defendant in a civil action who is also the subject of criminal charges will face the 'Hobson's choice' of making potentially incriminating admissions during discovery or asserting his Fifth Amendment rights and losing his case," but a witness choosing between testifying and asserting his Fifth Amendment privilege present a different concern, no more "dire of unfair than that of any other party who cannot find witnesses to testify on his behalf.").

Additionally, as discussed above, the Defendants and Mr. Lewis have not convinced this Court that the Defendants could not call any other witness to testify on their behalf regarding whether the Debtor received value in exchange

the Transfer at issue in the Adversary Proceeding. Furthermore, as noted at the hearing, other options exist to protect Mr. Lewis outside of the extraordinary remedy of staying the proceedings. For example, the Court can place Mr. Lewis' testimony under seal, or order a bond to protect the plaintiffs. (See Hearing Held in Courtroom D, January 29, 2013 (11:31 AM)). For the foregoing reasons, the Court finds this factor weighs against the granting of a stay.

The Court also finds that consideration of both the fifth and sixth Adelphia factors, the interests of the Court and the public, weigh against the Court's granting a stay. As expressed in Adelphia, "[t]he Court has an interest in efficiently managing its caseload." Adelphia, 2003 U.S. Dist. LEXIS 9736 at * 5, citing Beckham-Easley, 2002 U.S. Dist. LEXIS 17896, 2002 WL 31111766 at *3. The Court agrees with the Creditor Trust that "[g]enerally allowing a case to proceed in the normal course of that docket will promote the interests of the court." (See Doc. # 20, p. 15, ¶ 63).

This is not to say that the "public interest involved in Creditor Trust's pursuit of claims on behalf of the Debtor in the Adversary Proceeding" is any greater than the "public interest advanced in the Criminal Proceeding." (See Doc. # 13, p. 14). The proceedings involve different defendants, and "[t]here are few overlapping parties, documents, issues, claims, and defenses" among the two proceedings." (See Doc. # 20, p. 15, ¶¶ 63-64). There is a public interest in advancing both proceedings, and no public harm in allowing both cases to proceed simultaneously.

-30-

Thus, after careful consideration of the above factors, the Court finds Mr. Lewis' argument for a stay of the Adversary Proceedings without merit.

**V.**

In conclusion, Mr. Lewis' *Motion to Intervene* is both procedurally and substantively deficient, and as such is denied. Further, even if the Court granted Mr. Lewis' *Motion to Intervene*, it would deny his *Motion to Stay the Adversary Proceeding*. If, after discovery begins, some other action may be appropriate to further protect Mr. Lewis' Fifth Amendment right against self-incrimination, the Court will consider any timely requests for such. An appropriate order will be entered herewith.

Date: July 9, 2013                    /s/ Jeffery A. Deller
                                       **JEFFERY A. DELLER**
                                       United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**             **FILED**
        Crystal H. Thornton-Illar, Esq.
        Ronald B. Roteman, Esq.               JUL 09 2013
        Ronald DiNicola, Esq.
        Office of the United States Trustee   CLERK, U.S. BANKRUPTCY COURT
        Chapter 11 Trustee                    WEST. DIST OF PENNSYLVANIA